**BARTLETT MEMORIAL MEDICAL CENTER, INC. et al., Plaintiffs,**

**v.**

**Tommy G. THOMPSON, Secretary Department of Health and Human Services, Defendant.**

**No. CIV–00–1277–A.**

United States District Court,
W.D. Oklahoma.

Oct. 22, 2001.

---

Henry D Hoss, McAfee & Taft, Oklahoma City, OK, Sanford E Pitler, Elizabeth A McFall, Bennett Bigelow & Leedom PS, Seattle, WA, for plaintiffs.

Robert J Troester, Eleanor D Thompson, U.S. Attorney's Office, Oklahoma City, OK, Gerard Keating, U.S. Department of Health & Human Services, Washington, DC, for defendant.

### ORDER

ALLEY, District Judge.

This matter comes before the Court on: (1) Defendant's Motion to Dismiss; (2) Plaintiffs' Motion for Summary Judgment; and (3) Defendant's Cross-motion for Summary Judgment. The parties have fully briefed the motions, and the Court entertained oral argument on the issues presented therein.

This Order is being submitted for publication because the issue presented herein is being litigated in many jurisdictions and the case law is still in the early stages of development.

Having considered the parties' positions, the Court finds as follows; and unless otherwise noted, the following facts are not disputed by the parties. Plaintiffs are or operate Oklahoma for-profit, not-for-profit or public hospitals that participate in the Medicare and Medicaid programs. Defendant, the Secretary of Health and Human Services, delegated responsibility for administering the Medicare program to the Health Care Financing Authority ("HCFA"), an agency of the Department of Health and Human Services.[1]

---

1. HCFA was recently renamed the Center for Medicare and Medicaid Services. In this case, the Court will use HCFA for simplicity.

Among the benefits covered by Medicare are hospital services, such as those provided by Plaintiffs. At the close of a fiscal year, a provider of services submits to its fiscal intermediary, generally a private insurance company that act as the claims processor, a "cost report" showing both the costs incurred during the year and the appropriate share of those costs to be apportioned to Medicare.[2] 42 C.F.R. §§ 413.20(b), 413.24(f). The intermediary analyzes and audits the cost report and informs the provider of a final determination of the amount of Medicare reimbursement in a notice of program reimbursement ("NPR"). 42 C.F.R. § 405.1803.

If a provider disagrees with the NPR, it may file an appeal with the Professional Reimbursement Review Board ("PRRB"). 42 U.S.C. § 1395oo(a). Appeals to the PRRB must be filed within 180 days of receipt of the NPR by the provider. 42 U.S.C. § 1395oo(a)(3). A provider may obtain judicial review of any final decision of the PRRB. 42 U.S.C. § 1395oo(f)(1).

The Secretary's regulations provide an alternative avenue of relief to a provider in disagreement with its intermediary regarding an NPR. Within three years of receipt of an NPR, a provider may request reopening by the fiscal intermediary. 42 C.F.R. § 405.1885(a). Jurisdiction for reopening an NPR rests exclusively with the fiscal intermediary. 42 C.F.R. § 405.1885(c). In addition, if within three years of the issuance of an NPR the HCFA notifies the intermediary that its determination or decision is inconsistent with the applicable law, regulations or general instructions issued by the HCFA, the intermediary must reopen and revise the NPR. 42 C.F.R. § 405.1885(b).

On October 1, 1983, Congress adopted a prospective payment system ("PPS") to reimburse most hospitals, including Plaintiffs, for inpatient operating costs. 42 U.S.C. § 1395ww(d). This system is based upon a predetermined rate set on a per-discharge basis subject to certain payment adjustments. 42 U.S.C. § 1395ww(d)(1)(4). Congress designed the Medicare PPS system to include a disproportionate share adjustment to compensate hospitals serving a disproportionate share of low-income patients ("DSH share"). 42 U.S.C. § 1395ww(d)(5)(F)(i)(I).

On May 6, 1986, the Secretary adopted regulations implementing the DSH statute and finding that payment would be made only for those days that the patient was entitled to state Medicaid reimbursement, i.e. the days the hospital was actually reimbursed under the state plan. 42 C.F.R. § 412.106(b)(4) (1998). On April 13, 1998, in *Anadarko Mun. Hosp. v. Shalala*, CIV–97–288–A (W.D. Okla.April 13, 1998), this Court held that the Secretary's interpretation of 42 U.S.C. § 1395ww(d)(5)(F)(i)(I), contained in 42 C.F.R. § 412.106(b)(4), was void *ab initio*. This Court held that 42 U.S.C. § 1395ww(d)(5)(F)(i)(I) obliges payment for those days a patient would be *eligible* for coverage under the state Medicaid plan rather than *entitled* to coverage. The Court further held that the term "eligible" in 42 U.S.C. § 1395ww(d)(5)(F)(iv)(I)(II) refers to a patient's right to receive funds under the Medicaid plan, rather than actual receipt of funds under the plan.[3]

---

**2.** BlueCross BlueShield of Oklahoma was the fiscal intermediary for all Plaintiffs.

**3.** Other courts had previously concluded the Secretary's interpretation was improper and held the regulation to be invalid. *See Cabell Huntington Hosp. v. Shalala*, 101 F.3d 984 (4th Cir.1996); *Legacy Emanuel Hosp. &*

*Health Ctr. v. Shalala*, 97 F.3d 1261 (9th Cir.1996); *Deaconess Health Serv. Corp. v. Shalala*, 912 F.Supp. 438 (E.D.Mo.1995), *aff'd and adopted*, 83 F.3d 1041 (8th Cir.1996); *Jewish Hosp., Inc. v. Secretary of Health & Human Servs.*, 19 F.3d 270, 276 (6th Cir. 1994).

As a result of the litigation invalidating 42 C.F.R. § 412.106(b)(4), HCFA issued Ruling 97–2 on February 27, 1997. The ruling provided that HCFA will count those days a patient was eligible for medicaid whether or not the hospital received actual payments for those days. However, the new calculation was prospective only, and was to be applied only to those hospitals that at that time had appeals pending regarding the NPRs.

Plaintiffs herein seek the benefit of the Secretary's new interpretation, now codified at 42 C.F.R. § 402.106.[4] Plaintiffs did not utilize the 180 day appeals period provided by 42 U.S.C. § 1395oo(a)(3). Plaintiffs each timely requested pursuant to 42 C.F.R. § 405.1885(a) that BlueCross BlueShield, their fiscal intermediary, reopen the NPRs for the years at issue herein. In each case the intermediary refused to reopen, citing Ruling 97–2 and its prohibition against retrospective payments.[5] Thereafter, the PRRB declined to consider the cases because Plaintiffs were appealing the intermediary's refusal to reopen their costs reports, a decision resting exclusively with the intermediary. *See* 42 C.F.R. § 405.1885(c) (Jurisdiction for an NPR rests exclusively with the administrative body that rendered the last determination or decision).

Plaintiffs argue that the Secretary has usurped the intermediary's 42 C.F.R. § 405.1885(c) discretion over reopening decisions by mandating in Ruling 97–2 that the new interpretation of 42 U.S.C. 1395ww(d)(5)(F)(i)(I) would not be retroactively applied. Plaintiffs also argue that the Secretary has not fulfilled his mandatory obligation under 42 C.F.R. § 405.1885(b), which provides that "[a] determination or a hearing decision rendered by the intermediary shall be reopened and revised by the intermediary if, within the aforementioned 3–year period, the Health Care Financing Administration notifies the intermediary that such determination or decision is inconsistent with the applicable law, regulations, or general instructions issued by the Health Care Financing Administration in accordance with the Secretary's agreement with the intermediary." Plaintiffs argue that this language mandates that the HCFA notify their fiscal intermediary that the NPRs should be reopened due to the Secretary's improper interpretation of 42 U.S.C. § 1395ww(d)(5)(F)(i)(I).

The Secretary filed a motion to dismiss, asserting that the Court lacks jurisdiction over the case. In support of dismissal the Secretary argues that because the PRRB lacked jurisdiction to reconsider Plaintiffs' reopening requests, there is no "final determination" subject to review by this Court. He contends that because the refusal to reopen was not a "final determination" of payment, there was no PRRB review, and consequently, there can be no review by this Court.

4. Plaintiffs each dispute the DSH adjustment in at least one NPR. In each case the fiscal intermediary issued the NPR before HCFAR 97–2 was published. For nine of the fifteen NPRs at issue the request for reopening was filed with the fiscal intermediary before the issuance of Ruling 97–2. None of the Plaintiffs had appeals pending before the PRRB at the time Ruling 97–2 was issued, and therefore did not benefit from the Secretary's new interpretation of 42 U.S.C. § 1395ww(d)(5)(F)(i)(I).

5. Ruling 97–2 specifically provides that "[w]e will not reopen settled cost reports based on this issue.... For hospital cost reports which have been settled prior to the effective date of this ruling, but for which the hospital has a jurisdictionally proper appeal pending on this issue pursuant to either 42 C.F.R. § 405.8111 or 42 C.F.R. § 405.1835, these days may be included for purposes of resolving the appeal."

Plaintiffs rely in part on 42 U.S.C. § 1395oo(f)(1) as the basis for this Court's jurisdiction. Pursuant to § 1395oo(f)(1) "[p]roviders shall have the right to obtain judicial review of any final decision of the Board . . . by a civil action commenced within 60 days of the date on which notice of any final decision is . . . received." Defendant argues that this Court's jurisdiction under § 1395oo(f)(1) presupposes jurisdiction by the PRRB under § 1395oo(a) or (b), and that because the PRRB did not have jurisdiction, this Court does not either. 42 U.S.C. § 1395oo(a)(1)(A)(i) permits a provider to obtain a hearing before the PRRB with respect to a cost report if the provider "is dissatisfied with a final determination of . . . its fiscal intermediary . . . as to the amount of total program reimbursement due the provider . . . for the period covered by such report. . . ." Because a decision denying reopening is not a final decision on the amount of reimbursement due, Defendant asserts the PRRB did not have jurisdiction over the reopening decision, and consequently, this Court does not either. Defendant relies on the Supreme Court's decision in *Your Home Visiting Nurse Servs. v. Shalala*, 525 U.S. 449, 119 S.Ct. 930, 142 L.Ed.2d 919 (1999).

Plaintiffs respond by arguing that this case is distinguishable from *Your Home*. In *Your Home*, the primary issue was "whether the Board has jurisdiction to review a fiscal intermediary's refusal to reopen a reimbursement determination." *Id.* at 452, 119 S.Ct. 930. The Court considered the array of regulations governing the decision to reopen, and concluded that the PRRB did not have jurisdiction.

The Secretary's regulations limit jurisdiction to consider a motion to reopen to the "administrative body that rendered the last determination or decision." 42 C.F.R. § 405.1885(c). The Secretary has interpreted this to mean that "[a] provider has no right to a [PRRB] hearing on a finding by an intermediary or hearing officer that a reopening or correction of a determination or decision is not warranted." Provider Reimbursement Manual I § 2932.1. After reviewing the regulations, the *Your Home* Court determined that a fiscal intermediary is vested with the discretion to reopen an NPR determination, and neither the Medicare Act nor its implementing regulations grant the PRRB appellate jurisdiction over reopening decisions.

Plaintiffs contend that because this Court previously ruled that the Secretary's interpretation of 42 U.S.C. § 1395ww(d)(5)(F)(i)(I) was void *ab initio*, that *Your Home* does not apply. *See Anadarko Municipal Hosp. v. Shalala*, CIV–97–288–A (W.D. Okla.April 13, 1998) (invalidating the Secretary's interpretation of 42 U.S.C. § 1395ww(d)(5)(F)(i)(I)). "*Your Home* is not on point with respect to this Court's jurisdiction over this matter because there the Supreme Court did not address PRRB or court jurisdiction over a challenge to the validity of a HCFA Ruling that gives continuing legal effect to an invalidated regulation, applied in contravention of a court's order."[6] [Memorandum in Opposition to Defendant's Motion to Dismiss and In Support of Plaintiffs' Motion for Summary Judgment at p. 10].

 In reviewing the Medicare statutes, the Supreme Court noted that § 1395oo(a)(1)(A)(i) provides for a hearing before the Board with respect to a cost report if a provider "is dissatisfied with a final determination of . . . its fiscal inter-

---

**6.** The Court notes that its November 2, 1998 Order in *Anadarko* specifically refused to consider the legal implications of the Secretary's decision that HCFA Ruling 97–2, attempting to vitiate the prior illegal interpretation of 42 U.S.C. § 1395ww(d)(5)(F)(i)(I), would not be applied retroactively.

mediary ... as to the amount of total program reimbursement due the provider...." In this case, as in *Your Home*, the decision that the Plaintiffs sought to challenge before the PRRB was not the amount of reimbursement under the NPRs, but the decision of the fiscal intermediary not to reopen the NPRs. Nothing in the Medicare statutes permits the PRRB to review the decision of a fiscal intermediary not to reopen, whether or not the decision was made in the first instance by the fiscal intermediary or dictated by another. As in *Your Home*, the interpretation by the Secretary in this case is reasonable given the absence of any statutory provision for PRRB appellate jurisdiction over reopening decisions. Thus, the decision by the PRRB that it lacked jurisdiction to review the decision of the fiscal intermediary regarding reopening was not erroneous and will not be set aside.

■ Despite Defendant's arguments to the contrary, the decision of the PRRB that it lacked jurisdiction is a "final decision of the Board," triggering the right to judicial review. However, the Court's jurisdiction under § 1395*oo*(f)(1) is limited to consideration of whether the PRRB erred in concluding that it lacked jurisdiction. There is no basis under § 1395*oo*(f) for this Court to entertain Plaintiffs' challenge to HCFAR 97–2 and its non-retroactivity provision. The Secretary's policy set forth in HCFAR 97–2 was not a final determination as to the amount of payment and § 1395 permits a challenge only with regard to the amount of payment due. The Court does not have subject matter jurisdiction under the Medicare Act over Plaintiffs' reopening claims or the underlying claims for reimbursement. Therefore, the

basis for the Court's jurisdiction over those claims, if it exists, must lie elsewhere.[7]

Plaintiffs alternatively rely on 28 U.S.C. § 1331 as a basis for this Court's jurisdiction. Defendant asserts that there is no general federal question jurisdiction for this Medicare case.

> The findings and decision of the [Secretary] after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under Section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h) (made applicable to the Medicare Act by 42 U.S.C. § 1395ii). Defendant argues that because the Medicare statute provides both the standing and the substantive basis for Plaintiffs' presentation, that Plaintiffs cannot rely on 28 U.S.C. § 1331 for this Court's jurisdiction. *See Heckler v. Ringer*, 466 U.S. 602, 615, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000).

The above-quoted provision of § 405(h) is broadly interpreted. "[I]t demands the 'channeling' of virtually all legal attacks through the agency, it assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes

---

7. To the extent Plaintiffs are attempting to bring this action as a challenge to the reopening prohibitions of HCFAR 97–2, the challenge similarly fails. The decision by HCFAR to bar re-opening is not a decision of an intermediary subject to review under § 1395*oo*(a)(1)(A). *See Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 810 (D.C.Cir. 2001)

without possibly premature interference by different individual courts.∴..." *Id.* at 13, 120 S.Ct. 1084. The bar set forth in § 405(h) applies "irrespective of whether resort to judicial processes is necessitated by discretionary decisions of the Secretary or by his nondiscretionary application of allegedly unconstitutional statutory restrictions." *Weinberger,* 422 U.S. at 762, 95 S.Ct. 2457. Therefore, all claims, including Plaintiffs claims that HCFA improperly limited the retroactive application of Rule 97–2, are subject to the § 405(h) bar.

There is an exception to the § 405(h) bar. "[I]t is more plausible to read *[Bowen v.] Michigan Academy [of Family Physicians,* 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986),] as *holding* that § 1395ii does not apply § 405(h) where application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Illinois Council,* 529 U.S. at 19, 120 S.Ct. 1084.

In this case, the Court finds that the Secretary's regulations and rulings have not precluded all judicial review. Plaintiffs filed a majority of their requests for reopening prior to the issuance of Ruling 97–2, and all but one before this Court ruled that the Secretary's interpretation of 42 U.S.C. § 1395ww(d)(5)(F)(i)(I), contained in 42 C.F.R. § 412.106(b)(4), was void *ab initio.* Accordingly, Plaintiffs' assertion that it could not have utilized the statutory appellate process is incorrect. Plaintiffs could have, within 180 days of issuance of the NPRs, raised the issue of the calculation of the DSH and the Secretary's interpretation of § 1395ww(d)(5)(F)(i)(I), without awaiting court decisions to support their position.[8]

 Because Plaintiffs were not foreclosed all judicial review by the Medicare statutory scheme, the *Michigan Academy* exception to § 405(h) does not apply, and Plaintiffs may not proceed with this suit under a theory of 28 U.S.C. § 1331 jurisdiction. Furthermore, even if the Court had jurisdiction over Plaintiffs' claims under § 1331, the jurisdiction would be limited to the issue of reopening. *Monmouth Med. Ctr. v. Thompson,* 257 F.3d 807, 812 (D.C.Cir.2001). "Despite the intermediaries reliance on HCFAR 97–2, the ruling is separate from the denials of reopening, and under the Secretary's regulations, only the intermediaries have the jurisdiction to reopen 42 C.F.R. § 405.1885(c)." *Id.* Thus, the Court does not have jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331.

Plaintiffs finally assert that the Court has jurisdiction over their claims under 28 U.S.C. § 1361, the mandamus statute. The Supreme Court has not yet determined whether 42 U.S.C. § 405(h) through § 1395ii bars mandamus jurisdiction in Medicare cases. *Your Home,* 525 U.S. at 457, n. 3, 119 S.Ct. 930. Plaintiffs argue this case involves mandatory reopening governed by 42 C.F.R. § 405.1885(b), which requires an intermediary to reopen any determination or decision if the HCFA "notifies the intermediary that such determination or decision is inconsistent with the applicable law, regulations, or general instructions issued by [HCFA] in accordance with the Secretary's agreement with the intermediary." Defendant contends that Plaintiffs cannot meet either of the prerequisites for mandamus relief, and therefore, in this case, mandamus jurisdiction is inappropriate.

---

8. Clearly Plaintiffs could not have challenged the non-retroactivity provision of Ruling 97–2 prior to its issuance.

██ Mandamus relief is available "to a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer,* 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984).[9] Plaintiffs contend they have exhausted all other avenues of relief by requesting that their fiscal intermediary reopen their NPRs. Plaintiffs further contend that the Secretary's nondiscretionary duty is supplied by 42 C.F.R. § 405.1885(b), which requires reopening when the HCFA notifies a fiscal intermediary that its decision on an NPR was contrary to the law. Plaintiffs adopt as their argument the ruling of the D.C.Cir. in *Monmouth Med. Ctr. v. Thompson,* 257 F.3d 807 (D.C.Cir.2001). The *Monmouth* court held that Rule 97–2 was itself notification to the fiscal intermediaries that the prior interpretation of § 1395ww(d)(5)(F)(i)(I) was invalid and contrary to law, thereby obligating fiscal intermediaries to reopen and recalculate NPRs. This Court concurs.

Pursuant to 42 C.F.R. § 405.1885(b), once the Secretary has notified a fiscal intermediary that in its calculation of an NPR its "determination or decision is inconsistent with the applicable law[,]" the fiscal intermediary is obligated to reopen the NPR. Thus, the non-discretionary duty under § 405.1885(b) is borne by the fiscal intermediary, not the Secretary. The duty on the part of the fiscal intermediary arises once the Secretary has done his part by giving notice. Furthermore, Section 405.1885(b) does not require the provider to request that the fiscal intermediary or the Secretary to reopen the NPR. The reopening should be undertaken automatically upon the occurrence of the condition precedent, in this case Ruling 97–2.

The Secretary argues that he did not give notice that the fiscal intermediaries that their decisions regarding DSH payments were inappropriate. The Secretary asserts that "[w]hile Ruling 97–2 states that the Secretary's initial construction of the DSH statute can no longer be enforced in four circuits as to cost reports that are open or properly pending direct appeal on the DSH issue, the Ruling's categorical reopening prohibition belies the D.C. Circuit's finding that the Secretary notified the intermediary's that all closed DSH calculations had been finalized inconsistently with the law." [Defendant's Response to August 1, 2001 Order at 7]. However, Ruling 97–2 itself notes that although HCFA believes its ruling is permissible, its interpretation "is contrary to the applicable law in four judicial circuits."

This Court agrees with the decision in *Monmouth,* that promulgating and circulating Ruling 97–2 was notice to the intermediaries that the Secretary's prior interpretation, utilized by the intermediaries, was contrary to law. Ruling 97–2 "in ef-

---

**9.** Defendant contends the Tenth Circuit prohibits cases from proceeding on the basis of mandamus jurisdiction when the end result is the awarding of additional benefits. *See Dockstader v. Miller,* 719 F.2d 327 (10th Cir. 1983). The Court concurs with Plaintiffs' assertion that *Dockstader* does not preclude mandamus jurisdiction under the circumstances presented here. In *Dockstader,* the court noted that § 405(h) mandamus jurisdiction is not available where a plaintiff seeks to establish a right to benefits. "We are persuaded by the distinction the *Ringer* court and other courts have drawn between suits seeking to establish a right to benefits and suits requesting that SSA provide a procedure through which the right to benefits can be contested." *Id.* at 329 (citing *Ringer v. Schweiker,* 697 F.2d 1291, 1293–94 (9th Cir. 1982), *rev'd,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984)). In this case the Court ordered relief, as set forth infra, provides a procedure through which the Plaintiffs may seek review of the Secretary's invalid interpretation of 42 U.S.C. § 1395ww(d)(5)(F)(i)(I). Accordingly, *Dockstader* does not preclude the Court's mandamus jurisdiction.

fect announced a finding of inconsistency (even while purporting to veto reopening.)" *Monmouth*, 257 F.3d at 813. In addition, this Court in *Anadarko v. Shalala*, CIV–97–288–A (W.D. Okla. April 13, 1998), held that the Secretary's prior interpretation of 42 U.S.C. § 1395ww(d)(5)(F)(i)(I) was void *ab initio*. As a result of that litigation the NPRs in question were subject to revision. Obviously, to effectuate the Court's ruling the Secretary was required to inform the appropriate fiscal intermediaries, which included BlueCross BlueShield, of the need to recalculate the DSH payments.

Defendant further argues that Plaintiffs have not exhausted their administrative remedies. The Court disagrees, again concurring with the rationale of the *Monmouth* court. Plaintiffs in this case have done all they could, since the issuance of Ruling 97–2 with its non-retroactivity was not applied to the Plaintiffs and their requests for reopening until 2000.[10] "The question is whether they have done all they can to vindicate their right to reopening. We have already shown that how all other avenues of relief are either foreclosed or futile." *Monmouth*, 257 F.3d at 815.

■ The Court's ruling raises another issue: the fiscal intermediary is not a party to this action. However, under the Medicare scheme, "[t]he intermediaries are agents of the Secretary charged with the relevant duties under the Medicare Act and its regulations and, as such, they may properly be bound by a writ of mandamus against the Secretary." *Id.* at 813 (citing

*United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 502, 511 (4th Cir.1999); Fed.R.Civ.P. 65(d)). Therefore, although BlueCross BlueShield of Oklahoma is not a party to this action it is bound by the Court's ruling by virtue of its position as an agent of the Defendant. The providers are therefore entitled to have certain NPRs reconsidered for purposes of determining the DSH during the relevant time period.

■ There is, however, a limitation on the extent of reopening. The requests for reopening in this case were all made within three years of date the NPRs were issued. However, not all of the NPRs are subject to modification. When Plaintiffs made their requests for reopening, they based their requests on 42 C.F.R. § 405.1885(a). Section 405.1885(a) requires that a provider request reopening within three years of the issuance of the NPR. The Court's ruling, however, is based on 42 C.F.R. § 405.1885(b), which mandates reopening only for those NPRs issued within three years of the date upon which the fiscal intermediary received notice from the HCFA that its calculation was contrary to law or otherwise invalid. In this respect Court departs from the decision in *Monmouth*, which on the basis of equity held that all of the challenged NPRs had been the subject of reopening requests under § 405.1885(a) within three years of their issuance, and therefore they were subject to the court's § 405.1885(b) ruling.[11] This Court declines to adopt this

---

10. Each request for reopening was denied by the fiscal intermediary on January 27, 2000.

11. In addition, we think it insignificant that, because of the Secretary's own three year limitation, reopening would not be available if sought today. Although mandamus is classified as a legal remedy, its issuance is largely controlled by equitable principles. See *Duncan Townsite Co. v. Lane*, 245 U.S. 308, 38 S.Ct. 99, 62 L.Ed. 309 (1917). Since both hospitals were within the three-year mark

when they made their requests for reopening that was due them at that time. Cf. *Burnett* [*v. Bowen*], 830 F.2d at 736–41 & n. 7 [(1987)].

*Monmouth*, 257 F.3d at 814. If the Court were to adopt the reasoning of the *Monmouth* court in this regard the interests of finality addressed by the Defendant would become of concern. The limited scope of the Court's ruling ensures that only those NPRs properly subject to reopening under 42 C.F.R.

reasoning, finding it more appropriate to consider only those NPRs eligible for reconsideration under § 405.1885(b) when ordering a reopening under § 405.1885(b).

Utilizing the date HCFAR 97–2 was promulgated as the date notice was given to fiscal intermediaries under § 405.1885(b), February 27, 1997, the following NPRs are eligible for reopening to reconsider DSH payments:

NPR issued 9/24/94 to Bartlett Memorial Medical Center

NPR issued 9/23/94 to Comanche County Medical Center

NPR issued 5/12/95 to Mission Hill Memorial Hospital

NPR issued 8/19/94 to Shawnee Regional Hospital.

NPR issued 9/30/94 to St. John Medical Center

NPR issued 6/24/94 to University Hospitals.

The remaining NPRs were too old at the time HCFAR 97–2 was issued to fall under the reopening provision of § 405.1885(b); they had been issued to the providers more then three years prior. The NPRs not subject to this Order were final and not subject to 42 C.F.R. § 405.1885(b) when Ruling 97–2 was issued.[12] Unlike the *Monmouth* court, this Court declines to order those NPRs to be reconsidered by the fiscal intermediary. To hold otherwise would award the Plaintiffs reconsideration not ordinarily available under § 405.1885(b), the only appropriate basis for this Court to order reconsideration.

The Court's determination that certain NPRs are subject to reconsideration terminates the Court's substantive ruling in this matter. In all other respects, Plaintiffs request for relief must be denied, as there is no basis for jurisdiction over any other claims. For the reasons stated herein, Defendant's Motion to Dismiss and Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART, as specified *supra*. Plaintiffs' Motion for Summary Judgment is GRANTED, with regard to the NPRs specified herein as being subject to reconsideration. Because Plaintiff Hillcrest Medical Center has no NPRs subject to reconsideration, summary

§ 405.1885(b) will be the subject of reconsideration. NPRs too old for reconsideration under § 405.1885(b), and thus final, are not subject to the Court's Order.

Furthermore, this case is not governed by *Pittston Coal Group v. Sebben*, 488 U.S. 105, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988). In *Pittston*, the Court concluded that there was no mandamus jurisdiction to compel readjudication of claims decided under erroneous standards, because they had not been directly appealed to the courts within the time prescribed by statute. *Id.* at 107, 109 S.Ct. 414. Claims that had already become final by reason of the claimants' failure to pursue administrative remedies or petition for judicial review in a timely manner were not subject to readjudication. *Id.* at 121, 109 S.Ct. 414. In this case, however, those NPRs the Court is ordering reconsidered were not time-barred for reopening under 42 C.F.R. § 405.1885(b) when ruling 97–2 was promulgated and circulated to fiscal intermediaries. The NPRs fall within the three year period set forth in 42

C.F.R. § 405.1885(b), which is an alternative to the statutory method for reopening. A provider may, but is not required, to seek relief through the provisions of 42 U.S.C. § 1395oo(a)(1)(A)(i). In *Pittston*, however, there was not alternative method for seeking review, and the plaintiffs' failure to pursue administrative remedies precluded recovery. Thus *Pittston* does not preclude mandamus jurisdiction in this case.

12. Utilizing the date upon which fiscal intermediaries were notified about this Court's decision in *Anadarko* would operate to preclude reconsideration of all but one of the NPRs at issue in this litigation. Only the May 12, 1995 NPR of Mission Hill Memorial Hospital would be eligible for reopening under § 405.1885(b) if the Court utilized April 13, 1998, the date of its *Anadarko* order as the date of notice. The remaining NPRs were issued more than three years prior to April 13, 1998.

judgment is entered in favor of the Defendant on the claims of Hillcrest Medical Center. Judgment shall be entered in accordance with this Order. BlueCross BlueShield, the fiscal intermediary, an agent of the Defendant, shall reopen the costs reports specified herein within sixty days for recalculation of the DSH payments for the specified years. In all other respects, Plaintiffs' request for relief is denied.[13] Defendant's Motion to Suspend Discovery is denied as moot.

---

**13.** The Court makes no determination at this time regarding any forthcoming applications for costs and attorneys' fees.