**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 20 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

BARTLETT MEMORIAL MEDICAL
CENTER, INC.; COMANCHE
COUNTY HOSPITAL AUTHORITY,
d/b/a Comanche County Memorial
Hospital; HILLCREST MEDICAL
CENTER; SSM MISSION HILL
CORPORATION, d/b/a Mission Hill
Memorial Hospital; MIDAMERICA
HEALTH CARE, INC., d/b/a Shawnee
Regional Hospital; PAULS VALLEY
GENERAL HOSPITAL; SISTERS OF
SORROWFUL MOTHER – ST. JOHN
MINISTRY CORPORATION, d/b/a
St. John Medical Center;
UNIVERSITY HOSPITALS
AUTHORITY, d/b/a University
Hospital,

      Plaintiffs - Appellees/Cross-
      Appellants,

v.

TOMMY G. THOMPSON, Secretary,
Department of Health and Human
Services,

      Defendant - Appellant/Cross-
      Appellee.

Nos. 02-6142, 02-6152

Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 00-CV-1277-A)

Anne Murphy, Attorney, Appellate Staff Civil Division, United States Department of Justice, Washington, D.C. (Robert D. McCallum, Jr., Assistant Attorney General, United States Department of Justice, Washington, D.C., Robert G. McCampbell, United States Attorney, Oklahoma City, Oklahoma, and Anthony J. Steinmeyer, Attorney, Appellate Staff Civil Division, United States Department of Justice, Washington, D.C., with her on the briefs) for Defendant-Appellant/Cross-Appellee.

Sanford E. Pitler, Bennett, Bigelow & Leedom, P.S., Seattle, Washington (Lisa Dobson Gould, Bennett Bigelow & Leedom, P.S., Seattle, Washington, with him on the briefs) for Plaintiffs-Appellees/Cross-Appellants.

---

Before **EBEL** and **BRISCOE**, Circuit Judges, and **SHADUR**,[*] Senior District Judge.

---

**EBEL**, Circuit Judge.

---

The Medicare Act, 42 U.S.C. §§ 1395 et seq., contains a "disproportionate share hospital" (DSH) provision which permits additional reimbursement to hospitals that handle a disproportionate share of low-income patients. In the mid-1990s, many hospitals, including Plaintiffs, sued the Secretary[1] of Health and Human Services (HHS), claiming that his regulations improperly interpreted this

---

[*]Honorable Milton I. Shadur, Senior District Court Judge, Northern District of Illinois, sitting by designation.

[1]Donna Shalala was the Secretary of Health and Human Services from 1993 to 2001, the period in which many of the events underlying this lawsuit occurred and in which this action was filed. In 2001, Shalala was replaced by Tommy G. Thompson, who has accordingly been substituted as the defendant in this action. For the sake of simplicity, we refer throughout this opinion to the defendant in this case as "the Secretary" and use the masculine pronoun.

provision, resulting in lower payments to hospitals. This litigation was successful, and on February 27, 1997, the Secretary issued Ruling 97-2, which purported to change the Secretary's interpretation of the DSH provision to comply with these court rulings. The Secretary instructed, however, that the new interpretation would only be applied <u>prospectively</u> and that no cost reports from previous years would be reopened for recalculation under the new rule.

Unhappy with the prospective nature of the Secretary's ruling, the Plaintiff Hospitals in this case sought to have cost reports from the early 1990s reopened and adjusted to reflect the new interpretation. Their requests were denied because of Ruling 97-2's instruction that reports could not be reopened with respect to the DSH reimbursement. Plaintiffs unsuccessfully sought to appeal within the agency, which held it had no authority to review a denial of a request for reopening. Plaintiffs then sought judicial review in the Western District of Oklahoma to challenge the validity of Ruling 97-2. Over the Secretary's objection, the district court found jurisdiction to hear the case under the mandamus statute, 28 U.S.C. § 1361. It ordered that some of the reports be reopened and that others be considered for reopening.

The Secretary now appeals, asserting that the district court erred in finding mandamus jurisdiction, and the Secretary argues there is no other jurisdictional

basis to hear these claims.  Plaintiffs cross-appeal, primarily contending that the district court should also have found federal question jurisdiction.

Because we find that the Secretary did not owe any clear, non-discretionary duty to Plaintiffs, we hold that mandamus jurisdiction does not lie; however, because we find this case falls into a narrow exception created by Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667 (1986), we find that federal question jurisdiction does lie.  Nevertheless, exercising our federal question jurisdiction, we REVERSE the district court's grant of summary judgment to Plaintiffs—and its denial of summary judgment to the Secretary—because we determine that Plaintiffs cannot prevail as a matter of law on any of their claims.

## I.    BACKGROUND

Plaintiffs are or operate Oklahoma for-profit, not-for-profit or public hospitals that participate in the Medicare and Medicaid programs.  The Health Care Financing Authority ("HCFA") (now called the Center for Medicare and Medicaid Services), is the agency of HHS responsible for administering the Medicare program.

Some of the hospital services provided by Plaintiffs are covered by Medicare.  At the close of each fiscal year, Plaintiffs file a "cost report" with a

fiscal intermediary to determine their entitlement to Medicare reimbursement. 42 C.F.R. §§ 413.20(b). A fiscal intermediary is generally a private insurance company (in this case, BlueCross BlueShield of Oklahoma) that acts as a claims processor for Medicare claims. The intermediary analyzes and audits the cost report and issues a notice of program reimbursement (NPR) that gives the hospital a final determination of the amount of its Medicare reimbursement for the given year. Id. § 405.1803.

Once a hospital has received an NPR from its fiscal intermediary, it has two ways to contest the amount of reimbursement. First, it may file an appeal with the Provider Reimbursement Review Board ("PRRB" or "Board"). 42 U.S.C. § 1395oo(a). An appeal to the PRRB must be filed within 180 days of the receipt of the NPR, id. § 1395oo(a)(3), and any final decision of the PRRB is subject to judicial review, id. § 1395oo(f)(1).

Second, the fiscal intermediary may reopen the NPR. 42 C.F.R. § 405.1885.[2] It is this reopening provision that is primarily at issue in this case.

_____

[2]In 1997, 42 C.F.R. § 405.1885 provided in relevant part:

**Reopening a determination or decision.**

(a)    A determination of an intermediary . . . may be reopened with respect to findings on matters at issue in such determination . . . by such intermediary officer . . . either on motion of such intermediary officer . . . or on the motion of the provider affected by such

(continued...)

There are two separate ways reopening may occur. First, within three years of the issuance of the NPR, the hospital may request that the fiscal intermediary reopen the NPR. Id. § 405.1885(a). The fiscal intermediary has exclusive jurisdiction over this decision, and a denial of reopening may not be reviewed by the PRRB or the federal courts. Id. § 405.1885(c); Your Home Visiting Nurse Servs. v. Shalala, 525 U.S. 449, 452-56 (1999). Second, if within three years of the issuance of an NPR, the HCFA notifies the intermediary that its initial

_____

[2](...continued)

> determination . . . to revise any matter in issue at any such proceedings. Any such request to reopen must be made within 3 years of the date of the notice of the intermediary . . . decision . . . . No such determination or decision may be reopened after such 3-year period except as provided in paragraphs (d) [fraudulent determinations or decisions] and (e) [determinations or decisions issued prior to 1972] of this section.

> (b)    A determination . . . rendered by the intermediary shall be reopened and revised by the intermediary if, within the aforementioned 3-year period, the Health Care Financing Administration notifies the intermediary that such determination or decision is inconsistent with the applicable law, regulations, or general instructions issued by the Health Care Financing Administration in accordance with the Secretary's agreement with the intermediary.

> (c)    Jurisdiction for reopening a determination or decision rests exclusively with that administrative body that rendered the last determination or decision.

> . . . .

This regulation was amended in August 2002 in light of circuit court decisions unfavorable to the Secretary.

determination "is inconsistent with the applicable law, regulations, or general instructions issued by the [HCFA]," the intermediary _must_ reopen and revise the NPR.  Id. § 405.1885(b).  These two procedures are respectively referred to as "discretionary reopening" and "mandatory reopening."

In the early 1990s, one component of Plaintiffs' reimbursement was based on the Medicare Act's "disproportionate share hospital" (DSH) provision, which permits more recovery for hospitals handling a disproportionate share of low-income patients.  42 U.S.C. § 1395ww(d)(5)(F)(i).  Despite clear instruction from Congress in 1986 that DSH reimbursement should be based on days for which the patient was _eligible_ for state Medicaid assistance, _see_ _id._ § 1395ww(d)(5)(F)(vi)(II), the Secretary's regulations permitted recovery under this provision only for days for which the patient was _entitled_ to state Medicaid assistance.  42 C.F.R. § 412.106(b)(4).  Between 1994 and 1996, the Fourth, Sixth, Eighth and Ninth Circuits addressed this issue and held that the Secretary's interpretation was inconsistent with the Medicare statute.  Cabell Huntington Hosp., Inc. v. Shalala, 101 F.3d 984, 991 (4th Cir. 1996); Legacy Emanuel Hosp. & Health Ctr. v. Shalala, 97 F.3d 1261, 1266 (9th Cir. 1996); Deaconess Health Servs. Corp. v. Shalala, 83 F.3d 1041, 1041 (8th Cir. 1996); Jewish Hosp., Inc. v. Sec'y of Health & Human Servs., 19 F.3d 270, 272 (6th Cir. 1994); see also

- 7 -

Incarnate Word Health Servs. v. Shalala, No. 3:95-CV-0851-R, 1997 WL 446463, at *1 (N.D. Tex. July 25, 1997).

Because their DSH reimbursement prior to these decisions had been calculated based on the Secretary's interpretation, Plaintiffs initiated two courses of litigation. The first course of litigation mimicked the suits decided by the Fourth, Sixth, Eighth and Ninth Circuits and involved seven of the eight Plaintiffs named in this case. In that litigation, the plaintiffs challenged the DSH reimbursement in NPRs which had been issued to them within the preceding 180 days. Because the plaintiffs in that case acted within the 180-day window, they were able to appeal those NPRs to the PRRB. 42 U.S.C. § 1395oo. The PRRB denied their appeals, and they sought judicial review in the Western District of Oklahoma. See Anadarko Municipal Hosp. v. Shalala, No. CIV-97-288-A, 1998 WL 34007421 (W.D. Okla. Apr. 13, 1998). On April 13, 1998, that court followed the Courts of Appeals that had previously decided the issue and invalidated the Secretary's DSH regulation, 42 C.F.R. § 412.106(b)(4), as inconsistent with the Medicare statute. Anadarko, No. CIV-97-288-A, 1998 WL 34007421, at *5. It held that the Secretary's regulation was void *ab initio*, ordered that the HCFA recalculate the DSH reimbursement for the challenged NPRs, and ordered that the Secretary apprise the Court every three months regarding its rescission of the challenged regulation. Id. at *7. The Secretary did

not challenge this decision on appeal and initiated efforts to revise the invalid regulation through rulemaking.

The second track of litigation culminated in the instant case. The Plaintiffs sought review of fifteen NPRs that were fewer than three years old but that could not be appealed directly to the PRRB because more than 180 days had passed since their issuance.[3] With respect to these NPRs, Plaintiffs filed requests for discretionary reopening under § 405.1885(a) with the fiscal intermediary between June 13, 1996 and May 1, 1998.

On February 27, 1997, during the time the Plaintiffs were filing these requests for reopening, but before the fiscal intermediary had ruled on any of the requests, the Secretary issued Ruling 97-2. Ruling 97-2 stated that the Secretary would prospectively change his interpretation of the DSH provision to accord with the decisions of the Courts of Appeals that had reached the issue. The new interpretation would apply to any NPRs for which there were appeals pending before the PRRB, but no NPRs would be reopened on the basis of this changed interpretation.[4] Thus, none of the NPRs challenged in the instant case were

---

[3]The fiscal intermediary issued these fifteen NPRs between June 18, 1993, and May 12, 1995.

[4]Ruling 97-2 reads in relevant part:

This Ruling states the policy of the Health Care Financing Administration concerning the determination to change its interpretation of
(continued...)

- 9 -

[4](...continued)

[the statutory DSH provision and the DSH regulation] to follow the holdings of the United States Courts of Appeals for the Fourth, Sixth, Eighth and Ninth Circuits. Under the new interpretation, the Medicare disproportionate share adjustment under the hospital inpatient prospective payment system will be calculated to include all inpatient hospital days of service for patients who were eligible on that day for medical assistance under a State Medicaid plan in the Medicaid fraction, whether or not the hospital received payment for those inpatient hospital services.

. . .

In implementing the calculation of the Medicaid fraction, HCFA interpreted the statutory language to include as Medicaid patient days only those days for which the hospital received Medicaid payment for inpatient hospital services. This interpretation has been considered by the courts of appeals in four judicial circuits. . . . In each of the cases, the court declined to uphold HCFA's interpretation, reasoning that the statutory language "eligible for Medicaid assistance" would include days on which the patient meets Medicaid eligibility criteria regardless of whether payment is made.

Although HCFA believes that its longstanding interpretation of the statutory language was a permissible reading of the statutory language, HCFA recognizes that as a result of the adverse court rulings, this interpretation is contrary to the applicable law in four judicial circuits.

In order to ensure national uniformity in calculation of DSH adjustments, HCFA has determined that, on a prospective basis, HCFA will count in the Medicaid fraction the number of days of inpatient hospital services for patients eligible for Medicaid on that day, whether or not the hospital received payment for those inpatient hospital services. . . .

We will not reopen settled cost reports based on this issue. For hospital cost reports that are settled by fiscal intermediaries on or after the effective date of this ruling, these days may be included. For hospital cost reports which have been settled prior to the effective date of this ruling, but

(continued...)

eligible for reopening under Ruling 97-2 because none had been timely appealed to the PRRB.

Accordingly, on January 27, 2000, the fiscal intermediary denied Plaintiffs' requests for discretionary reopening, citing Ruling 97-2. The Plaintiffs sought to appeal this denial to the PRRB, challenging the validity of Ruling 97-2. Applying Supreme Court precedent, however, the PRRB declined jurisdiction to hear these appeals because the decision to reopen rests within the exclusive jurisdiction of the fiscal intermediary. The PRRB held that the Plaintiffs' challenge to the legality of Ruling 97-2 was no different than a challenge to an intermediary's discretionary denial of a request to reopen, which is not appealable. The PRRB's decision was issued to Plaintiffs and informed them of their rights to seek judicial review of its decision under 42 U.S.C. § 1395oo(f)(1) and 42 C.F.R. § 405.1875 and 1877.

Before the district court, Plaintiffs sought to challenge Ruling 97-2's instruction forbidding fiscal intermediaries to reopen NPRs, as well as the fiscal intermediary's denial of reopening. With respect to discretionary reopening under § 405.1885(a), they argued that Ruling 97-2 denied the fiscal intermediary its

---

[4](...continued)
for which the hospital has a jurisdictionally proper appeal pending on this issue pursuant to either 42 C.F.R. § 405.1811 or 42 C.F.R. § 405.1835, these days may be included for purposes of resolving the appeal.

regulatory discretion to reopen NPRs within three years of issuance.  With respect to mandatory reopening under § 405.1885(b), they argued that Ruling 97-2 constituted notice to the fiscal intermediaries that the NPRs had been decided inconsistently with the applicable law, thus triggering the intermediaries' duties to reopen and revise.  The Secretary moved to dismiss on the grounds that the district court lacked subject matter jurisdiction to hear the case.

Plaintiffs asserted three grounds for jurisdiction before the district court—jurisdiction under the Medicare statute (42 U.S.C. § 1395oo(f)(1)), federal question jurisdiction under 28 U.S.C. § 1331, and mandamus jurisdiction under 28 U.S.C. § 1361.  The district court found that jurisdiction was not proper under the Medicare statute or under § 1331, but found that the requirements of mandamus jurisdiction were satisfied.  It granted Plaintiffs' motion for summary judgment and ordered the fiscal intermediary to reopen the six NPRs that fell within the time period for mandatory reopening.  Bartlett Mem'l Med. Ctr. v. Thompson, 171 F. Supp. 2d 1215, 1225-26 (W.D. Okla. 2001).  On cross-motions to amend the judgment under Rule 59, the district court further required that the fiscal intermediary exercise its discretion to determine whether the remaining nine NPRs should be reopened, without regard to Ruling 97-2 or any contrary instruction by the Secretary.  Bartlett Mem'l Med. Ctr. v. Thompson, No. CIV-00-

1277-A, at 7-8 (W.D. Okla. Mar. 6, 2002) (order granting in part Plaintiffs' motion to amend judgment).

On appeal, the Secretary asserts the district court incorrectly found mandamus jurisdiction. On cross-appeal, Plaintiffs assert that the district court should have also found federal question jurisdiction and that the district court should have required mandatory reopening with respect to the final nine NPRs. Plaintiffs no longer maintain that jurisdiction is appropriate under the Medicare statute.

## II.    DISCUSSION

The parties have filed cross-appeals from the district court's resolution of Defendant's Motion to Dismiss and both parties' Motions for Summary Judgment. We exercise jurisdiction over these appeals under 28 U.S.C. § 1291 and REVERSE the judgment of the district court. We find that the requirements of mandamus jurisdiction were not satisfied, that the requirements of federal question jurisdiction were satisfied, and that Plaintiffs cannot prevail on their claims.

### A.    Mandamus Jurisdiction

The Medicare Act incorporates 42 U.S.C. § 405(h), which states:

No action against the United States, the [Commissioner of Social Security], or any officer or employee thereof shall be brought under section 1331

- 13 -

[federal question jurisdiction] or 1346 [United States as defendant] of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. §§ 405(h) (incorporated into the Medicare Act via 42 U.S.C. § 1395ii). Section 405(h) does not, however, explicitly bar mandamus jurisdiction under 28 U.S.C. § 1361 for Medicare claims. The Supreme Court has thus far declined to decide whether mandamus jurisdiction is available for claims arising under the Medicare Act, Your Home, 525 U.S. at 456; Heckler v. Ringer, 466 U.S. 602, 616 (1984), but this Court has held that such jurisdiction is available if a suit, rather than seeking a right to benefits, requests "a procedure through which the right to benefits can be contested." Dockstader v. Miller, 719 F.2d 327, 329 (10th Cir. 1983). Because we conclude that Plaintiffs are challenging "a procedure through which the right to benefits can be contested," we find that Dockstader permits the consideration of mandamus jurisdiction in this case.

Mandamus relief is available to "a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." Ringer, 466 U.S. at 616; Cordoba v. Massanari, 256 F.3d 1044, 1047 (10th Cir. 2001).[5] We conclude that, although Plaintiffs satisfy the

_____

[5]The mandamus statute states:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff.

(continued...)

- 14 -

exhaustion requirement, they have failed to demonstrate that the Secretary owed them a clear, non-discretionary duty. Thus, mandamus jurisdiction cannot lie.[6]

### 1. Exhaustion

The only issue contested by the parties with respect to exhaustion is whether Plaintiffs' failure to file appeals with the PRRB within 180 days of receiving the NPRs challenged in this case necessarily means that they failed to exhaust all of their administrative remedies. The resolution of this question depends on whether Plaintiffs, through this court action, are contesting the intermediary's application of Ruling 97-2 to their requests for reopening, or if, as the Secretary argues, they are really challenging the calculation of their DSH reimbursement. If they are challenging the application of Ruling 97-2, then they would never have had an opportunity to appeal that issue to the PRRB within 180 days of their NPRs because Ruling 97-2 was not issued until after that 180-day

---

[5](...continued)
28 U.S.C. § 1361.

[6]The district court's opinion pointed out another issue with respect to mandamus jurisdiction: "the fiscal intermediary is not a party to this action." Bartlett Mem'l Med. Ctr., 171 F. Supp. 2d at 1224. It concluded that this was not a problem, however, because the fiscal intermediaries are "agents of the Secretary" and could therefore be bound by a judgment against the Secretary. Id. (quoting Monmouth Med. Ctr. v. Thompson, 257 F.3d 807, 813 (D.C. Cir. 2001) ("The intermediaries are agents of the Secretary charged with the relevant duties under the Medicare Act and its regulations, and, as such, they may properly be bound by a writ of mandamus against the Secretary.")). The parties do not raise this issue on appeal.

time period had expired; however, if they are directly challenging the DSH calculation, they would have had the opportunity to perfect that appeal within 180 days of the issuance of their NPRs.

We find that Plaintiffs are challenging the application of Ruling 97-2 to their requests for reopening and thus they had no available administrative remedies which were unexhausted. The Secretary's regulations create the administrative remedy of reopening, which Plaintiffs were entitled to pursue. Plaintiffs argue that the Secretary, through Ruling 97-2, unlawfully denied them access to that remedy by denying the fiscal intermediary its regulatory discretion under § 405.1885(a) to reopen NPRs within three years of issuance. They also argue that Ruling 97-2 triggered the fiscal intermediary's duty under § 405.1885(b) to reopen NPRs once the HCFA informs them that their determinations were contrary to law. These challenges could not have been made prior to the time that Ruling 97-2 was applied to Plaintiffs' requests for reopening.

The Secretary's argument that Plaintiffs are only trying to obtain judicial review of the DSH calculation in the NPRs is nonsensical because Plaintiffs already litigated that issue in another case and won. Anadarko held the Secretary's DSH regulation void *ab initio*—thus, there is no question that if the instant NPRs can be reopened, they should be recalculated. Plaintiffs had no need

for the district court to make that same determination in this case, and indeed it did not. The district court in this case nowhere required that the DSH reimbursement be calculated in a particular way. It ordered only that Plaintiffs' NPRs be reopened in accordance with the regulations.

Given that Plaintiffs are in fact challenging Ruling 97-2 and not the DSH calculation, they have clearly exhausted their administrative remedies. They timely filed requests for reopening pursuant to 42 C.F.R. § 405.1885(a) and then attempted to have the PRRB review the intermediary's application of Ruling 97-2. Once the PRRB declined jurisdiction, Plaintiffs had no other alternatives for agency review and timely filed this action in the district court. Contrary to the Secretary's suggestions, it would have been impossible for Plaintiffs to have resolved this issue through an initial appeal to the PRRB within 180 days after the issuance of the NPRs at issue because Ruling 97-2 was not in effect or applied to them until after the 180-day window for appeal had passed. 42 U.S.C. § 1395oo(f)(a)(1); see Monmouth Med. Ctr. v. Thompson, 257 F.3d 807, 815 (D.C. Cir. 2001) ("The Secretary argues that the hospitals have failed to exhaust their remedies, because they failed to file proper appeals of their NPRs under § 1395oo(a). But that fact is hardly relevant here. The question is whether they have done all they can to vindicate their right to reopening. We have already shown above how all other avenues of relief are either foreclosed or futile.");

Your Home Visiting Nurse Servs., Inc. v. Sec'y of Health & Human Servs., 132 F.3d 1135, 1141 (6th Cir. 1997), aff'd on other grounds, 525 U.S. 449, 456-57 (1999) ("Your Home's failure to appeal the initial determination would preclude mandamus review of that determination, but does not preclude review of a decision not to reopen. Your Home has exhausted all available remedies with respect to its claim that Blue Cross improperly denied its request to reopen.").

Finally, the policies behind exhaustion have been satisfied in this case.

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

Weinberger v. Salfi, 422 U.S. 749, 765 (1975). Each of these policies has been fulfilled in this situation, supporting our conclusion that Plaintiffs have exhausted their claims.

### 2. Clear Non-Discretionary Duty

The second requirement for mandamus jurisdiction is that the defendant owe the plaintiff a clear, non-discretionary duty. In this case, the Plaintiffs allege two distinct non-discretionary duties as the basis for mandamus jurisdiction. First, they allege that the fiscal intermediary had a duty to reopen the cost reports under 42 C.F.R. § 405.1885(b) (mandatory reopening) when it was notified by the Secretary that the NPRs were decided inconsistently with the applicable law.

Second, they allege that the Secretary had a duty under 42 C.F.R. § 405.1885(a) (discretionary reopening) to allow the fiscal intermediaries to exercise their discretion in deciding whether to reopen the NPRs without the interference of Ruling 97-2. We find that both of these arguments fail and that neither the Secretary nor the fiscal intermediaries owed the Plaintiffs a clear, non-discretionary duty under the mandatory or discretionary reopening regulations.

### a. Mandatory Reopening

The Plaintiffs' first argument for a clear, non-discretionary duty is based on the "mandatory reopening" provision—42 C.F.R. § 405.1885(b). This provision states that:

> A determination or a hearing decision rendered by the intermediary shall be reopened and revised by the intermediary if, within the aforementioned 3-year period, the Health Care Financing Administration <u>notifies</u> the intermediary that such determination or decision <u>is inconsistent with the applicable law</u>, regulations, or general instructions issued by the Health Care Financing Administration in accordance with the Secretary's agreement with the intermediary.

<u>Id.</u> (emphasis added). Plaintiffs argue that the Secretary[7] notified the intermediaries that the instant NPRs were "inconsistent with the applicable law" on two separate occasions: 1) when the Secretary issued Ruling 97-2, and 2) when the district court issued its order in <u>Anadarko Municipal Hosp. v. Shalala</u>, No.

---

[7]Because the HCFA is the Secretary's agent, they are interchangeable for purposes of this section. <u>See generally</u> 42 C.F.R. ch. IV, subch. A, pt. 400.

CIV-97-288-A, 1998 WL 34007421 (W.D. Okla. Apr. 13, 1998). Thus, argue Plaintiffs, after receiving this notification, the intermediaries owed Plaintiffs a clear, non-discretionary duty to reopen and revise the NPRs. In response, the Secretary argues that the NPRs were not "inconsistent with the applicable law" and, even if they were, the Secretary never notified the intermediaries that they were. Thus, the intermediaries had no duty to reopen and revise.

We find that neither Ruling 97-2 nor the Anadarko decision constituted notification under § 405.1885(b). Therefore, the fiscal intermediaries had no clear, non-discretionary duty to reopen.

### i.    Notification Via Ruling 97-2

Plaintiffs allege that Ruling 97-2 constituted notification to the intermediaries that the instant NPRs were "inconsistent with the applicable law" and must be reopened and revised in accordance with § 405.1885(b). We hold that this Ruling did not constitute notification under subsection 1885(b). The language of Ruling 97-2 clearly evinces both the Secretary's belief that his prior interpretation of the DSH provision was not inconsistent with the applicable law and his intent that no NPRs be reopened on that basis.

First, the Ruling nowhere uses the phrase "inconsistent with the applicable law." See Monmouth, 257 F.3d at 813 (the Secretary "studiously avoided" using the language "inconsistent with the applicable law" in Ruling 97-2 to avoid

- 20 -

notification to the intermediaries under (b)).  Instead, the Ruling merely concedes that the Secretary's interpretation was "contrary to the applicable law in four judicial circuits."  Ruling 97-2 (emphasis added).

Second, the Ruling clearly asserts the Secretary's belief that his DSH regulation was a permissible interpretation of the applicable statute and that the purpose of changing his interpretation was to ensure national uniformity in calculation of DSH reimbursement, not a concession that his prior interpretation was inconsistent with the applicable law.

Third, Ruling 97-2, rather than notifying the fiscal intermediary to reopen and revise the challenged NPRs, expressly forbade it from doing so.  Given the unambiguous language of the Ruling, we cannot find that it constitutes the kind of notification that would require mandatory reopening as contemplated by § 405.1885(b).[8]

In so holding, we part company with the District of Columbia Circuit, which held that Ruling 97-2 did constitute notification under § 405.1885(b).  Monmouth, 257 F.3d at 813-14.  Although it observed as we do that the Ruling

_____

[8]The Secretary also argues at length that the NPRs at issue in this case were not decided inconsistently with the applicable law of the Western District of Oklahoma because at the time they were decided, the Secretary's regulation was "the applicable law" in that jurisdiction.  Because we conclude that, regardless of whether the decisions were inconsistent with the applicable law, the Secretary never notified the fiscal intermediaries that they were, we do not resolve this issue.

- 21 -

"studiously avoid[s] using the magic words 'inconsistent with the applicable law,' and instead call[s] the earlier interpretation 'contrary to the applicable law in four judicial circuits,'" id., the D.C. Circuit nevertheless went on to find that Ruling 97-2 implicitly notified the intermediaries that the prior interpretation was "inconsistent with the applicable law" because it was issued as an interpretive ruling without notice and comment.  Id.

Monmouth reasons as follows.  First, it observes that if Ruling 97-2 effected a substantive legal change, notice and comment rulemaking would have been required for its promulgation.  Id. at 813-14; see 42 U.S.C. § 1395hh(a) (stating that "[n]o rule, requirement, or other statement of policy (other than a national coverage determination) that establishes or changes a substantive legal standard" may take effect unless it is promulgated consistently with that subchapter); id. § 1395hh(b)(1).  The D.C. Circuit then concluded that because Ruling 97-2 changed a substantive legal standard, it failed to satisfy the notice and comment requirements of § 1395hh(b).

However, even if the D.C. Circuit were correct so far in its analysis (which we do not have to resolve in this case), we do not agree with how the Court proceeds from that point to the conclusion that the Secretary had given the notice of invalidity required for mandatory reopening under 42 C.F.R. § 405.1885(b).  One would have assumed that the logical conclusion from the D.C. Circuit's

- 22 -

reasoning to this point would be to hold that Ruling 97-2 was invalid because of its failure to comply with notice and comment procedures. Instead, however, the Court peculiarly concluded that notice and comment was <u>not</u> required for Ruling 97-2. It reached this conclusion by finding that Ruling 97-2, in fact did <u>not</u> effect a substantive legal change—because instead of <u>changing</u> the prior regulation, Ruling 97-2 merely conceded that the prior regulation was a nullity.

Finally, the D.C. Circuit concluded, Ruling 97-2's implicit admission that the prior regulation was a nullity constituted notification to the intermediaries that their decisions under the prior regulation were "inconsistent with the applicable law" and triggered their duty to reopen under § 405.1885(b). <u>Monmouth</u>, 257 F.3d at 814 ("Concluding that the Secretary *did* in fact give notice of the interpretation's inconsistency with applicable law, we also find that § 405.1885(b) imposed a clear duty on intermediaries to reopen DSH payment determinations for the hospitals.").

We find this reasoning unsound because it makes assumptions about the premises and intended effect of Ruling 97-2 that do not comport with fact or with the clear intention of the Secretary. Unlike the D.C. Circuit, we believe the concept of "notification" requires some level of intent by the Secretary. The Medicare Act provides no statutory right to reopen—the reopening regulations exist merely at the grace of the Secretary, and the Secretary has complete

discretion as to when to employ the mandatory reopening regulation. 42 U.S.C. § 1395ff(b)(1)(G) ("The Secretary may reopen or revise any initial determination or reconsidered determination described in this subsection under guidelines established by the Secretary in regulations."). Because it is purely at the Secretary's discretion to issue a notification requiring mandatory reopening, we cannot follow the D.C. Circuit's lead and eradicate that discretion by holding that the Secretary may inadvertently notify the intermediaries to reopen and revise NPRs, contrary to his own clearly expressed intent not to allow reopening.

### ii.     Notification via the <u>Anadarko</u> decision

Plaintiffs also contend that the intermediaries were notified by the Secretary that their prior decisions were inconsistent with the applicable law when the District Court for the Western District of Oklahoma ordered the Secretary to revise the NPRs at issue in <u>Anadarko</u>. We hold that this order does not constitute notification under § 405.1885(b).

In <u>Anadarko Municipal Hosp. v. Shalala</u>, No. CIV-97-288-A, 1998 WL 34007421 (W.D. Okla. Apr. 13, 1998), the Western District of Oklahoma held that the Secretary's regulation interpreting the statutory DSH provision was invalid *ab initio* and ordered him to recalculate the DSH reimbursement in the NPRs at issue <u>in that case</u>. <u>Id.</u> at *7. All of those NPRs had been appealed within 180 days to the PRRB and then timely appealed in federal court—and therefore

- 24 -

none needed to be reopened under the reopening regulation. Plaintiffs argue that the district court's order constituted notification that the intermediary's prior decisions were inconsistent with the applicable law and necessitated mandatory reopening.

We disagree. First, Anadarko was a decision issued by the district court and therefore cannot constitute notification by the HCFA or by the Secretary, as required under § 1885(b). See 42 C.F.R. § 405.1885(b) (stating that an NPR must be reopened if "the Health Care Financing Administration notifies the intermediary . . .") (emphasis added).

Second, the district court in Anadarko expressly refused to address the issue of reopening. After the court had issued its first order invalidating the Secretary's regulation, the Anadarko plaintiffs moved to enforce that judgment by asking the court to order the Secretary to withdraw Ruling 97-2. The court refused this request, stating that "this issue as it relates to reopening of finalized cost reports is not before this Court." Anadarko Municipal Hosp. v. Shalala, No. CIV-97-288-A, at 3 (W.D. Okla. Nov. 2, 1998) (order denying motion to enforce judgment). Indeed, the court in Anadarko concluded that "HCFA Ruling 97-2 does not recognize that its prior interpretation was invalid." Id. For these reasons, the Anadarko orders simply cannot constitute notification under § 405.1885(b).

Plaintiffs also contend that the Secretary was required to notify the intermediaries of the <u>Anadarko</u> decision in order to effectuate the court's judgment in that case and that the "Secretary's own regulations and policy manuals create a duty to inform intermediaries of the applicable laws to which they are bound." Assuming that the Secretary has a duty to inform the intermediaries regarding the applicable law, that duty can apply only prospectively. Plaintiffs point to no provision in the regulations that indicates the Secretary is ever required to order reopening.

For these reasons, we conclude that the Secretary never notified the intermediaries that their decisions were inconsistent with the applicable law. Thus, the mandatory reopening provision creates no clear, non-discretionary duty that would satisfy the requirements of mandamus jurisdiction.

**b.     Discretionary Reopening**

Plaintiffs also argue that, under the discretionary reopening regulation, the Secretary had a clear, non-discretionary duty to refrain from interfering with the fiscal intermediary's discretion in deciding whether to reopen the challenged NPRs. The discretionary reopening provision states:

(a)     A determination of an intermediary . . . <u>may be reopened</u> with respect to findings on matters at issue in such determination . . . by such intermediary officer . . . either on motion of such intermediary officer . . . or on the motion of the provider affected by such determination . . . to revise any matter in issue at any such proceedings. Any such request to reopen must be made within 3

years of the date of the notice of the intermediary . . . . No such determination or decision may be reopened after such 3-year period except as provided in paragraphs (d) [fraudulent determinations or decisions] and (e) [determinations or decisions issued prior to 1972] of this section.

. . .

(c)     Jurisdiction for reopening a determination or decision rests exclusively with that administrative body that rendered the last determination or decision.

42 C.F.R. § 405.1885 (emphasis added).

In Ruling 97-2, the Secretary adopted a new prospective interpretation of its DSH rule and forbade the reopening of NPRs by intermediaries on the basis of this new interpretation. Plaintiffs argue that in this respect Ruling 97-2 violated the Secretary's clear, non-discretionary duty to allow the fiscal intermediaries to exercise their discretion to reopen NPRs without instruction from the Secretary. Plaintiffs believe this duty is found in § 405.1885(c), which states that jurisdiction for reopening rests exclusively with the fiscal intermediary. Because we give significant discretion to agency interpretations of their own regulations, we conclude that § 405.1885(c) does not create a clear, non-discretionary duty for the Secretary to leave the substantive law governing the decision to reopen exclusively up to the fiscal intermediaries.

The Secretary argues that he has never interpreted 42 C.F.R. § 405.1885(c) "as freeing the fiscal intermediary from its obligation to follow the law,

- 27 -

including, in this case, the Secretary's acquiescence ruling. On the contrary, the Secretary has interpreted 42 C.F.R. § 405.1885(c) as a prohibition upon administrative review of the fiscal intermediary's determination with respect to reopening." We may invalidate this interpretation only if it is "plainly erroneous or inconsistent with the regulation." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (internal quotation marks and citation omitted).

We believe the Secretary's interpretation is permissible. The provision in question does not say that the fiscal intermediary has exclusive discretion to decide whether to reopen. It says the fiscal intermediary has exclusive jurisdiction over the reopening decision. These two concepts are distinct. "Discretion" means "a power or right conferred upon [public functionaries] by law of acting officially in certain circumstances, according to the dictates of their own judgment and conscience, uncontrolled by the judgment or conscience of others." Black's Law Dictionary at 419 (5th ed. 1979). Nowhere does the regulation indicate that the intermediary has unfettered discretion to decide reopenings. "Jurisdiction," on the other hand, means the "[p]ower and authority of a court to hear and determine a judicial proceeding." Id. at 766. Thus, while the fiscal intermediary may have been the only entity with the power and authority to render a decision on the request for reopening, it does not necessarily follow

- 28 -

that it had unfettered discretion to disregard substantive principles established by the Secretary in reaching a particular decision on the matter.

This distinction distinguishes this case from United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954), on which the district court relied. In Accardi, the Board of Immigration Appeals was instructed by regulation that "'in considering and determining . . . appeals, [it] shall exercise such discretion and power conferred upon the Attorney General by law . . . ." Id. at 266 (emphasis added). The Supreme Court thus held that the Attorney General could not interfere with the exercise of the Board's discretion because

> [i]n unequivocal terms the regulations delegate to the Board discretionary authority as broad as the statute confers on the Attorney General; the scope of the Attorney General's discretion became the yardstick of the Board's. And if the word "discretion" means anything in a statutory or administrative grant of power, it means that the recipient must exercise his authority according to his own understanding and conscience. . . . In short, as long as the regulations remain operative, the Attorney General denies himself the right to sidestep the Board or dictate its decision in any manner.

Id. at 266-67. We agree with the Secretary's position that "[u]nlike the complete delegation of discretionary authority in Accardi, the . . . delegation of authority to the fiscal intermediary in the reopening regulation is limited to specifying a forum for reopening claims and to providing that the fiscal intermediary's resolution of those claims should be unreviewable by the PRRB."

Under this interpretation of the regulation, the Secretary would not be prevented from issuing a general ruling proscribing reopening on a particular

- 29 -

issue, and the fiscal intermediary would be obliged to comply with the Secretary's substantive rule. The Secretary owed Plaintiffs no clear, non-discretionary duty not to pass rulings that would bind intermediaries to particular substantive principles on particular reopening requests. Thus, mandamus jurisdiction cannot be found on this basis.

Further, we note that, even if Ruling 97-2 had merely announced the Secretary's new interpretation of the DSH rule and stated that the Ruling would only be applied prospectively, without specifically forbidding the intermediaries to reopen, the intermediaries could not have reopened and revised without violating their duty to comply with the agency's law.

\*　　\*　　\*

In sum, Plaintiffs are not entitled to mandamus jurisdiction because they have failed to show that the Secretary owed them a clear, non-discretionary duty under the mandatory or discretionary reopening regulations.

## III.　FEDERAL QUESTION JURISDICTION

On cross-appeal, Plaintiffs assert that the district court should also have found federal question jurisdiction under 28 U.S.C. § 1331. Because we conclude that this case falls into the narrow exception created in <u>Bowen v. Michigan</u>

Academy of Family Physicians, 476 U.S. 667 (1986), we find that federal question jurisdiction is available in this case.

The Medicare Act incorporates 42 U.S.C. § 405(h), which provides that "[n]o action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." See 42 U.S.C. § 1395ii. While § 405(h) appears to create an absolute ban on federal question jurisdiction for any claim related to Medicare, the Supreme Court has interpreted it otherwise. In Michigan Academy, the court found that while federal question jurisdiction did not exist for challenges to benefit determinations, it did exist for "challenges to the validity of the Secretary's instructions and regulations." 476 U.S. at 680. As discussed throughout this opinion, the challenge in this case is to Plaintiffs' right to reopening, not to the actual benefits calculation by the intermediary.

Michigan Academy, however, has a significant factual distinction from the instant case. The challenge in Michigan Academy was to a regulation under Part B of the Medicare Act, whereas the instant case arises under Part A of the Medicare Act. Unlike claims brought under Part A, claims brought under Part B are not subject to review beyond that conducted by the relevant "carrier," which is the Part B counterpart of the Part A fiscal intermediary. Thus,

> [s]ubject to an amount-in-controversy requirement, individuals aggrieved by delayed or insufficient payment with respect to benefits payable under

Part B are afforded an "opportunity for fair hearing by the *carrier*," 42 U.S.C. § 1395u(b)(3)(C) (emphasis added); in comparison, and subject to a like amount-in-controversy requirement, a similarly aggrieved individual under Part A is entitled "to a hearing thereon by the *Secretary* . . . and to judicial review," 42 U.S.C. § 1395ff(b)(1)(C), (b)(2).

Michigan Academy, 476 U.S. at 675. Concerned with the possibility that claimants under Part B would be utterly prohibited from ever attacking any regulation under Part B in federal court, the Court concluded that § 405(h) did not bar federal jurisdiction over such claims. Id. at 678-81.

As Michigan Academy's analysis indicates, a similar exception for a claim arising under Part A is highly unlikely because of the panoply of opportunities for review that Part A provides to claimants. Providers dissatisfied with initial determinations by fiscal intermediaries may appeal to the PRRB and then to the federal courts. If they do not directly appeal, they may also petition the fiscal intermediary for reopening. Claimants under Part B have no such options. Nevertheless, because of the unusual nature of the claims in this case, we believe a Michigan Academy exception is warranted.

In Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1 (2000), the Supreme Court applied Michigan Academy in a case arising under Part A of Medicare. The Court stated:

[I]t is more plausible to read *Michigan Academy* as *holding* that § 1395ii does not apply § 405(h) where application of § 405(h) would not simply channel review through the agency, but would mean no review at all. And

contrary to Justice Scalia's suggestion, that single rule applies to Medicare Part A as much as to Medicare Part B.

Illinois Council, 529 U.S. at 19 (citation omitted).

As in Michigan Academy, the Plaintiffs in this case challenge the validity of a rule promulgated by the Secretary—in this case Ruling 97-2. While a typical rule would likely apply to the fiscal intermediary's original determination of benefits, and thus could be challenged by appeal to the PRRB, the challenged portion of Ruling 97-2 applies only to a request for reopening. Once the reopening is denied by the fiscal intermediary—under what the Plaintiffs allege is an invalid rule—they have no recourse to challenge the rule. Thus, there is no conceivable set of circumstances that could have permitted Plaintiffs to challenge the validity of Ruling 97-2 within the procedures provided by the agency. This constitutes the "no review at all" that Illinois Council held justified federal question jurisdiction.

Although Illinois Council ultimately denied federal question jurisdiction to the plaintiffs in that case, the facts of that case are distinguishable from those of the instant case. In contrast to Plaintiffs in this case, the plaintiffs in Illinois Council had failed even to attempt to vindicate their complaints through a host of available agency procedures. Id. at 20-21. Although the Illinois Council plaintiffs raised a number of complaints regarding the effectiveness of the agency procedures as a practical matter, the Court held this was not the type of

- 33 -

"unavailability of review" required to bypass § 405(h). In this case, however, Plaintiffs challenged Ruling 97-2 at the earliest opportunity, and the PRRB declared it had no jurisdiction over the challenge, leaving Plaintiffs no remaining avenues through which to pursue their claims before the agency. Thus, Plaintiffs effectively received "no review at all" on their challenge to Ruling 97-2 and should be permitted to bring their challenge before this court. Because of this unique situation, we conclude that we may exercise federal question jurisdiction over this case under <u>Michigan Academy</u>.

## IV.   MERITS

Having granted federal question jurisdiction, however, we reverse the district court's grant of summary judgment for the Plaintiffs because they have failed to state a claim on which they can succeed.

Plaintiffs first contend that Ruling 97-2 and/or the <u>Anadarko</u> decision constituted notification to the intermediaries that required mandatory reopening. As discussed at length above, we find that neither of these constituted such notification. Thus, Plaintiffs cannot prove that they were entitled to mandatory reopening.

Second, Plaintiffs contend that Ruling 97-2 impermissibly interfered with the discretionary reopening regulation. Again, as discussed at length above, we

do not find that to be the case either. Although the fiscal intermediary has exclusive <u>jurisdiction</u> to reopen, it does not likewise have exclusive <u>discretion</u> to make that determination. The fiscal intermediary is bound by the instructions of the Secretary, who has complete discretion to determine what HHS's policy will be with respect to reopening on various substantive issues. Thus, Ruling 97-2 did not unlawfully interfere with the discretion of the fiscal intermediaries by forbidding reopening of the NPRs on the DSH issue.

Finally, Plaintiffs cross-appeal the district court's failure to require mandatory reopening of all of the contested NPRs, failure to require reopening on their challenges to calculations based on paid days, and failure to award pre-judgment interest. Because we find that neither mandatory nor discretionary reopening was required with respect to any of the NPRs and that the Plaintiffs prevail on none of their claims, we deem these issues moot.

Thus, the Secretary is entitled to summary judgment on all claims.

\*    \*    \*

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for further proceedings in accordance with this opinion.

**No. 02-6142, <u>Bartlett Mem'l Med. Center v. Thompson</u>**

**BRISCOE, Circuit Judge, concurring and dissenting:**

I concur in part and dissent in part. With respect to the issue of mandamus jurisdiction discussed in Part II of the majority opinion, I agree that we can consider mandamus jurisdiction in this case, that plaintiffs have exhausted their administrative remedies, and that the decision in <u>Anadarko Municipal Hospital v. Shalala</u>, 1998 WL 34007421 (W.D. Okla. Apr. 13, 1998), did not impose a clear, non-discretionary duty on the fiscal intermediary to reopen and revise the notices of program reimbursement (NPRs) at issue in this case.[1] I disagree, however, that the fiscal intermediary did not have a duty to reopen under 42 C.F.R. § 405.1885(b) in light of Ruling 97-2. Instead, I would adopt the position announced by the United States Court of Appeals for the District of Columbia in <u>Monmouth Medical Center v. Thompson</u>, 257 F.3d 807 (D.C. Cir. 2001), and conclude that the fiscal intermediary has a clear, non-discretionary duty to reopen the NPRs at issue in light of Ruling 97-2. I also believe, contrary to the majority, that mandamus jurisdiction exists because of clear, non-discretionary duties on the part of the Secretary and the fiscal intermediary regarding the plaintiffs' requests for discretionary reopening under 42 C.F.R. § 405.1885(a). Finally, with

---

[1] It should be noted the Secretary concedes that those plaintiffs who were parties to the <u>Anadarko</u> case are entitled to have their NPRs reopened regardless of whether Ruling 97-2 triggered § 405.1885(b) (since the district court in <u>Anadarko</u> struck down the Secretary's regulations implementing the DSH adjustment). <u>See</u> Aplt. Br. at 37.

respect to Parts III and IV of the majority opinion, I agree that federal question jurisdiction exists over this matter, but disagree that there is no merit to plaintiffs' claims.

*Mandamus jurisdiction*

*"Applicable law" under § 405.1885(b)*

Before outlining my disagreements with the majority's conclusion that we lack mandamus jurisdiction, it is necessary to address a threshold argument asserted by the Secretary. The Secretary argues that the district court erred in holding "that Ruling 97-2 gave the fiscal intermediary notice that the hospitals' DSH payments had been determined inconsistently with the applicable law within the meaning of the regulation." Aplt. Br. at 30. According to the Secretary, none of the decisions from the four circuits overturning his interpretation of the DSH adjustment were binding in the Tenth Circuit. In other words, he argues, "[b]efore the effective date of Ruling 97-2, the 'applicable law' [in the Tenth Circuit] on the DSH question, for purposes of determining the hospitals' DSH payment amounts, consisted of [his] DSH regulation." Id. at 35. Thus, the Secretary argues, because "[i]t is undisputed that all of the cost reports at issue here were settled under the regulation," the district court "erred in holding that the hospitals' cost reports had been settled in a legally incorrect manner." Id.

It appears that the Secretary is attempting to read the mandatory reopening regulation, § 405.1885(b), as requiring an intermediary to reopen only if an NPR was erroneous at the time it was issued. In other words, the Secretary wants to focus on the state of the law at the time an NPR was initially decided by the fiscal intermediary. Applying that rationale to the facts of this case, the Secretary asserts that at the time the NPRs at issue were decided by the intermediary, they were consistent with Tenth Circuit law (i.e., there were no Tenth Circuit cases on point so the law was defined by the Secretary's regulations interpreting the DSH).

In my view, § 405.1885(b) is broader in scope than suggested by the Secretary. Although an agency's interpretation of its own regulations is generally given controlling weight, we are not bound to do so if the agency's interpretation is "plainly erroneous or inconsistent with the regulation." Mission Group Kan., Inc. v. Riley, 146 F.3d 775, 780 (10th Cir. 1998) (internal quotations omitted). Section 405.1885(b) provides that an NPR "shall be reopened and revised by the intermediary if . . . [CMMS] notifies the intermediary that such determination or decision is inconsistent with the applicable law, regulations, or general instructions issued by . . . [CMMS]." 42 C.F.R. § 405.1885(b) (emphasis added). The regulation's use of the word "is," rather than the word "was," belies the Secretary's proposed interpretation. More specifically, the use of the word "is" indicates that reopening will be triggered if, at the time the Secretary reviews an

- 3 -

NPR, it is inconsistent with applicable law. If the regulation had used the word "was," reopening would be limited to situations where the NPR was inconsistent with applicable law when issued. In sum, a plain reading of the language indicates the regulation is broad enough to encompass situations, such as the one presented here, where an NPR when issued was consistent with the Secretary's regulations or instructions, but ultimately proved to be inconsistent with the applicable law, regulations, or general instructions as determined by the Secretary.

*Duty to reopen under § 405.1885(b)*

According to the majority, Ruling 97-2 "did not constitute notification under subsection 1885(b)" because its language "clearly evinces both the Secretary's belief that his prior interpretation of the DSH provision was not inconsistent with the applicable law and his intent that no NPRs be reopened on that basis." Maj. Op. at 20. For the reasons that follow, I conclude that Ruling 97-2 did, in fact, require the intermediary to reopen under § 405.1885(b).

Ruling 97-2 was issued by the Secretary without the benefit of notice and comment. The result is two-fold. First, the relative informality of the ruling, in combination with the existence of a prior interpretation on the same subject, raises questions about the validity of the ruling. Second, assuming the validity of

- 4 -

the ruling, the informality by which it was issued means the ruling is not entitled to <u>Chevron</u>-type deference by this court. See <u>Tax & Accounting Software Corp. v. United States</u>, 301 F.3d 1254, 1260 (10th Cir. 2002) (citing <u>Christensen v. Harris County</u>, 529 U.S. 576, 587 (2000)). Instead, the positions announced therein by the Secretary are entitled to respect only to the extent they have the "power to persuade." <u>Christensen</u>, 529 U.S. at 589.

It is uncontroverted that at the time Ruling 97-2 was issued, the Secretary had in place an existing interpretation of the DSH provision of the Medicare Act. Significantly, Ruling 97-2 "purports to change [that] existing interpretation." <u>Monmouth</u>, 257 F.3d at 813. Under Tenth Circuit law, "altering an interpretive rule (interpreting an agency regulation) requires notice and opportunity for comment unless, of course, the original interpretation was invalid and therefore a nullity." <u>Id.</u> at 814; see <u>Rocky Mountain Helicopters, Inc. v. Federal Aviation Admin.</u>, 971 F.2d 544, 547 (10th Cir. 1992) (suggesting that "a change in existing law, policy, or practice" would have to meet APA procedural requirements); <u>Knutzen v. Eben Ezer Lutheran Hous. Center</u>, 815 F.2d 1343, 1351 and n.6 (10th Cir. 1987) (noting courts have consistently required that agencies publish their rules and policy statements only if they constitute a change in existing law, policy, or practice); <u>Dimension Fin. Corp. v. Bd. of Governors of Fed. Reserve Sys.</u>, 744 F.2d 1402, 1409 (10th Cir. 1984) (suggesting a "procedural notice

requirement" exists when an agency radically changes its position on statutory construction).[2]

Because it is uncontroverted that Ruling 97-2 was not the product of notice and comment rulemaking, we are left with two possible outcomes – either Ruling 97-2 is unlawful and thus invalid, or the Secretary's prior interpretation was invalid.[3] According to the majority, the most logical outcome is that Ruling 97-2 is invalid. While that might be true in normal circumstances, such a conclusion in this case would ignore entirely the long and troubled history of the Secretary's prior interpretation of the DSH adjustment. It is well established that the Secretary has been "hostile from the start to the very idea of making the [DSH] payments" mandated by Congress. Cabell Huntington Hosp., Inc. v. Shalala, 101 F.3d 984, 990 (4th Cir. 1996). Further, as noted in the background section of the majority opinion, the Secretary's prior interpretation spawned numerous lawsuits, all of which were resolved against the Secretary on the grounds that the prior

---

[2] Admittedly, the Tenth Circuit has "not had opportunity to decide whether the Medicare Act requirement of notice and comment for changes [of] a substantive legal standard creates a more stringent obligation [than does the APA] or whether it somehow changes the dividing line between legislative and interpretive rules." Monmouth, 257 F.3d at 814 (internal quotations omitted). Nevertheless, I agree with the Monmouth court that it is unnecessary "to explore the possibility of a distinction here, as [Ruling] 97-2 appears to have none of the indicia that would lead [me] to think it a legislative rule under the APA." Id.

[3] The majority suggests this analysis is unimportant to the outcome of the appeal. See Maj. Op. at 22 ("we do not have to resolve [the issue] in this case").

interpretation was invalid. E.g., Id. at 990-91; Legacy Emanuel Hosp. & Health Center v. Shalala, 97 F.3d 1261, 1266 (9th Cir. 1996); Deaconess Health Servs. Corp. v. Shalala, 83 F.3d 1041, 1041 (8th Cir. 1996); Jewish Hosp., Inc. v. Sec'y of Health & Human Servs., 19 F.3d 270, 272 (6th Cir. 1994). In short, courts in at least 25 of the 50 states had declared the Secretary's prior interpretation invalid. Given this history, I agree with the D.C. Circuit that, rather than invalidating Ruling 97-2, the more logical result is to conclude that Ruling 97-2 was the Secretary's way of "conced[ing] the invalidity [of the prior interpretation] nationally." Monmouth, 257 F.3d at 814; see Aplt. Br. at 29 (effectively acknowledging that Ruling 97-2 was intended "to acquiesce in [the] adverse decisions from the courts of appeals").

Having concluded that Ruling 97-2 amounted to a concession of the invalidity of the Secretary's prior interpretation of the DSH adjustment, I agree with the D.C. Circuit "that the Secretary," by way of Ruling 97-2, "did in fact give notice of the [prior] interpretation's inconsistency with applicable law." Monmouth, 257 F.3d at 814 (emphasis in original). In turn, I also agree "that § 405.1885(b) imposed a clear duty on intermediaries to reopen DSH payment determinations." Id.

It is true that the Secretary has strenuously attempted to prevent Ruling 97-2 from triggering § 405.1885(b). As noted by the majority, Ruling 97-2 "nowhere

- 7 -

uses the phrase 'inconsistent with the applicable law,'" and instead "merely concedes that the Secretary's interpretation was 'contrary to the applicable law <u>in four judicial circuits</u>.'" Maj. Op. at 21 (quoting Ruling 97-2). Likewise, Ruling 97-2 "asserts the Secretary's belief that his DSH regulation was a permissible interpretation of the applicable statute and that the purpose of changing his interpretation was to ensure national uniformity in calculation of DSH reimbursement, not a concession that his prior interpretation was inconsistent with the applicable law." <u>Id.</u> at 21. Lastly, Ruling 97-2 expressly forbids the fiscal intermediary from reopening and revising the challenged NPRs.

Unlike the majority, which defers completely to these statements with no mention of <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134 (1944), or other controlling standards, I find the quoted statements unpersuasive. In particular, the statements in my view are simply a continuation of the Secretary's long history of resisting the DSH payments mandated by Congress in the Medicare Act. Indeed, I believe the statements are an attempt by the Secretary to finally bring his interpretation in line with Congressional intent and end a succession of litigation defeats, while at the same time prevent hospitals, such at the plaintiffs in this case, from recovering the amounts properly due them under the DSH provisions. Thus, I agree with the D.C. Circuit that the statements are "simply inapplicable" and without effect. <u>Monmouth</u>, 257 F.3d at 815.

Finally, and relatedly, I take issue with the majority's discussion of "the concept of 'notification'" under § 405.1885(b). <u>See</u> Maj. Op. at 23. At the time Ruling 97-2 was issued, § 405.1885(b) stated that "[a] determination . . . rendered by the intermediary shall be reopened and revised . . . if . . . the [Secretary] notifies the intermediary that such determination or decision is inconsistent with the applicable law." Because Ruling 97-2 amounts to notification by the Secretary that the NPRs at issue were decided by the intermediary under an invalid interpretation of the DSH provision, § 405.1885(b) automatically imposed a duty on the intermediary to reopen those NPRs. Whether the Secretary was actually desirous of having the NPRs at issue reopened is irrelevant (and, as outlined above, the Secretary's statements on that point carry no weight under <u>Skidmore</u>).

*Discretionary reopening under § 405.1885(a)*

I generally agree with the majority that the Secretary owes "no clear, non-discretionary duty not to pass rulings that would bind intermediaries to particular substantive principles on particular reopening requests" under § 405.1885(a). Maj. Op. at 30. Nevertheless, I would conclude that plaintiffs' claim for discretionary reopening under § 405.1885(a) implicates two distinct non-discretionary duties. First, I believe the Secretary, in passing any such rulings

- 9 -

regarding reopening, has a clear, non-discretionary duty to comply with federal law in general, and the Medicare Act in particular. In other words, the Secretary must refrain from imposing improper and unenforceable restrictions on fiscal intermediaries in deciding reopening requests. Second, I believe that § 405.1885(a) imposes on fiscal intermediaries a duty to comply with the applicable law in deciding reopening requests. See generally Monmouth, 257 F.3d at 813 (concluding intermediaries, as agents of the Secretary, "may properly be bound by a writ of mandamus against the Secretary").

Having concluded the language of Ruling 97-2 prohibiting fiscal intermediaries from reopening and revising NPRs is without effect, I believe that both of the above-outlined non-discretionary duties were violated. In turn, I conclude mandamus jurisdiction would also lie on this basis.

*Merits*

For the reasons outlined above in my discussion of mandamus jurisdiction, I disagree with the conclusion in Part IV of the majority opinion that plaintiffs "have failed to state a claim on which they can succeed." Maj. Op. at 34. With one exception, I would affirm the district court's grant of summary judgment in favor of plaintiffs on their mandatory and discretionary reopening claims.

The one exception concerns plaintiffs' claim that the Secretary acted illegally in forbidding intermediaries from reopening an NPR on the basis of

- 10 -

Medicaid-eligible paid days that were improperly excluded from its calculation.

The district court did not address the "paid days" issue in its October 22, 2001, order granting summary judgment in favor of plaintiffs. The district court did, however, address the "paid days" issue in its March 6, 2002, order addressing the parties' Rule 59 motions:

> Plaintiffs contend the Court erred in failing to address their contention that the NPRs for which reopening has been requested were improperly calculated on another basis, that is that the fiscal intermediary failed to include paid days as well as unpaid days. Plaintiffs contend that the Secretary's regulations have always provided for reimbursement for paid days, and therefore, the reopening prohibition in Ruling 97-2 should not have been extended by the Secretary to cover challenges to calculations of Medicaid-paid days. In light of the above ruling and the October 22, 2002 Order, the Court need not address this contention.

App. at 76-77.

The question is what the district court intended by the above-quoted language. In its March 6, 2002, order, the court ordered the fiscal intermediary to reconsider whether nine of the NPRs at issue were subject to discretionary reopening. Perhaps the district court believed the intermediary's reconsideration necessarily would include consideration of the "paid days" issue. However, according to plaintiffs, all six of the NPRs that the court concluded were subject to mandatory reopening also contained "paid days" issues. Because there was no direction by the district court to the intermediary to address the "paid days" issue in these NPRs, it appears likely that the issue will be overlooked, or at least left

unresolved, by the intermediary.  It is also possible, given language in the court's October 22, 2001, order, that the district court concluded it had no jurisdiction over the "paid days" issue.  See id. at 44.  In light of these vagaries in the order, and because the precise underlying facts relevant to the "paid days" issue are difficult to discern from the limited record on appeal, I would remand the case to the district court for clarification of how it intended to resolve the "paid days" issue.